## ADNA B. CULVER & others *vs.* CALEB BENEDICT & another.

A broker in New York, to whom negotiable securities had been entrusted by their owner for the purpose of raising money thereon for him, delivered them, one in Connecticut, and the others in Massachusetts, pursuant to an agreement made in New York, as security for a preëxisting debt of his own. *Held*, that his creditor, if he took them in good faith, could not be compelled in equity to give them up to the owner, although by the laws of New York a transfer made under such circumstances is subject to the rights of the real owner.

The brother in law of one who as stakeholder is made a party to a suit in equity is not disqualified to take a deposition in the case as magistrate.

BILL IN EQUITY against Caleb Benedict and Edward F. Ensign to obtain possession of nine bonds for $1,000 each, issued in Indiana by the Logansport, Peoria and Burlington Railway Company, and payable to bearer.

The plaintiffs in their bill alleged that, being the owners of the bonds, they delivered them to Edward Soley to procure a loan on them for the plaintiffs, and for no other purpose ; that Soley, without right or authority, deposited them in the hands of Benedict; that they were now in the hands of Ensign, who had signed a receipt for them, by which he agreed to hold them in trust for the real owner, and, upon proof of the ownership, to deliver them to the owner; and that the plaintiffs had fully proved their ownership, but Benedict and Ensign had refused to deliver them to the plaintiffs.

Benedict, in his answer, alleged that he received the bonds from Soley as security for debts due from Soley to him, and for his liabilities as indorser for Soley, and received them in good faith in the ordinary course of business, and then and now believed that Soley owned them.

Ensign answered that he received and held the bonds as stakeholder, at the request of the plaintiffs and Benedict; and submitted himself to the order of the court.

At May term 1858 in Berkshire, *Metcalf,* J. submitted the cause to a jury; and there was evidence of the truth of all these allegations ; and it appeared that the agreement between Soley (who was a broker in New York) and Benedict was made in New York, and that, pursuant to that agreement, eight of the bonds were delivered by Soley to Benedict in this county, and the other one in the State of Connecticut.

Among the material evidence introduced by Benedict was the deposition of one Hillyer, taken before a justice of the peace, who was the brother in law of Ensign. The plaintiffs objected, at the taking of this deposition, to its being taken by said justice, on account of his connection with Ensign; and at the trial they objected to its admission for the same reason. But the court overruled the objection.

It was admitted at the trial, that by the law of the State of New York bonds transferred as these were alleged by Benedict to have been could not be held against the true owner; and the plaintiffs contended that the law of New York governed this

case; and that if they deposited the bonds with Soley for the purpose alleged, and he, without their authority, transferred them to Benedict, merely as collateral security for a preëxisting debt or liability, pursuant to a promise made in New York, then the plaintiffs were entitled to recover.

But the judge instructed the jury, " that if Soley, to secure Benedict for his prior claims and liabilities, delivered said bonds to him as collateral security, and Benedict received the same, not knowing and not having reasonable cause to believe that the bonds belonged to the plaintiffs, then, wherever Soley promised or agreed to let Benedict have said bonds as security for what he owed Benedict, upon the evidence respecting the delivery of said bonds to Benedict, he was entitled to hold the same against the plaintiffs."

The jury returned a verdict for the defendants, and the plaintiffs alleged exceptions, which were argued at Lenox at September term 1858.

*I. Sumner,* (*H. L. Dawes* with him,) for the plaintiffs. 1. A party taking a promissory note or other negotiable instrument, merely as collateral security for a preëxisting debt due him from his indorser or assignor, without other consideration, is not a holder for valuable consideration; but his rights are subject to the equities existing between the person from whom he receives it and the real owner. *Bay* v. *Coddington,* 5 Johns. Ch. 54, and 20 Johns. 637. *Stalker* v. *M'Donald,* 6 Hill, 93. *Chicopee Bank* v. *Chapin,* 8 Met. 40. *Thompson* v. *Shepherd,* 12 Met. 311. *Washington Bank* v. *Lewis,* 22 Pick. 32, and other cases cited in *Bramhall* v. *Beckett,* 31 Maine, 205, in which, upon a careful collection and revision of the authorities, this is shown to be the law of New York, New Hampshire, Connecticut, Pennsylvania, Massachusetts, Maine, and the circuit court of the United States for this circuit.

If there were a conflict between the law of Massachusetts and the law of New York on this subject, the law of New York, where the contract was made, must govern. *Curnegie* v. *Morrison,* 2 Met. 381. *Blanchard* v. *Russell,* 13 Mass. 1. Minot's Digest, Conflict of Laws, III. One of the bonds was delivered

in Connecticut, where the law is the same as in New York. *Brush* v. *Scribner*, 11 Conn. 388.

2. If Benedict had received the bonds as security for a debt contracted at the time of the transfer of the bonds to him, he could only hold to the amount of his debt or liability. *Chicopee Bank* v. *Chapin*, 8 Met. 40.

3. The deposition of Hillyer ought to have been excluded, for the reason stated in the report. *Sanborn* v. *Fellows*, 2 Foster, 473.

*J. D. Colt*, (*J. Rockwell* with him,) for the defendants.

Dewey, J.   The plaintiffs seek to recover the possession of certain railroad securities, usually called bonds.   These securities more closely resemble promissory notes payable to bearer. They are put in circulation, and pass from hand to hand by delivery, and are thus bought and sold in the stock market, no formal transfer being required; and interest is paid thereon to whomsoever demands the same, upon presentation thereof, or the coupons attached thereto.

The right of the defendant Benedict to retain these securities as against the plaintiffs must be decided upon the same principles as if they were negotiable notes made payable to bearer. Indeed this matter seems to be distinctly settled by legislative enactment.   By *St.* 1852, *c.* 76, " all bonds and other obligations under seal for the payment of money, purporting to be payable to the bearer, or some person designated or bearer, or payable to order, which have been or hereafter shall be issued by any corporation, are made negotiable, in the same manner and to the same extent as promissory notes are now negotiable."   *Chapin* v. *Vermont & Massachusetts Railroad*, 8 Gray, 494. *White* v. *Vermont & Massachusetts Railroad*, 21 How. 575.

These bonds were transferred to Benedict, as the case finds, as security for debts due from Soley to him, and for certain liabilities of Benedict as an indorser for Soley.   They were all received by Benedict in Massachusetts, except one, which was delivered to him in Connecticut.   They were all received by him in good faith, and without any reason for supposing any fraudulent act on the part of Soley in passing them over to

him. But it now appears that these bonds were, when delivered to Soley by the plaintiffs, the property of the plaintiffs, and that they were entrusted by them to Soley for the purpose of procuring a loan thereon for the benefit of the plaintiffs, and for no other purpose. The inquiry is, who has the better title to these bonds?

1. As to the place where this transfer must be deemed to have been made. None of these bonds were transferred to Benedict in the State of New York, but eight of them were delivered to him in Massachusetts, and one in Connecticut. The transfer must be dealt with as a Massachusetts contract, under the circumstances disclosed.

Such being the case, the point urged upon us, that by the law of New York a transfer of negotiable securities, in discharge of a preëxisting debt, or as collateral security therefor, is taken subject to the equities between prior parties, if it could be considered as applicable to a case like the present in the courts of New York, can have no effect here. By the law of Massachusetts, the receiving of a negotiable note, in payment of a preexisting debt, or as collateral security for the same, excludes all the equities between the original parties thereto. Of course, it must be taken in good faith, and without notice of anything to impeach its validity as a just debt. *Blanchard* v. *Stevens,* 3 Cush. 162. *Chicopee Bank* v. *Chapin,* 8 Met. 40. *Stoddard* v. *Kimball,* 6 Cush. 469.

2. As to the right of the plaintiffs to hold the surplus of the bonds, if any, after discharging the liabilities of Soley to the defendants, we do not perceive any question raised in the report of the case. The case differs essentially from *Chicopee Bank* v. *Chapin,* 8 Met. 40, as that was a suit against the party liable to pay the note. Here the matter in issue is the right of property in these bonds. The plaintiffs have failed to establish that right upon any facts stated in the case.

3. An objection was taken to the competency of the deposition of Hillyer. This objection, we think, cannot avail the plaintiffs. The defendant Ensign has no interest in the suit, and is not affected by a decision in favor of either of the real parties. He was constituted a trustee for both parties. His brother in law,

the magistrate who took the deposition, cannot be said there-fore to be related to any party in interest in the present suit.

*Judgment for the defendants.*